AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

United States America County
Southern District of Texas
FILED

AUG 1 5 2019

David J. Bradley, Clerk of Court

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| BRITTANY CAVANESS BARRETT | )  Case No. |
|  | ) |
|  | ) |
|  | ) |

H19-1515M

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___12/17/2017 through 4/30/2018___ in the county of ___Harris___ in the

___Southern___ District of ___Texas and elswhere___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956 | Laundering of Monetary Instruments |

This criminal complaint is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Hong Nguyen, Jr. , FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __August 15, 2019__

_____
*Judge's signature*

City and state: ___Houston, Texas___          Frances H. Stacy-Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Hong Nguyen, Jr., being first duly sworn, hereby depose and state as follows:

## Summary

The Federal Bureau of Investigation ("FBI") defines a business email compromise ("BEC") fraud as a sophisticated scam targeting businesses that regularly perform wire transfer payments. The scam is carried out by compromising legitimate business email accounts through social engineering or computer intrusion techniques to conduct unauthorized transfers of funds. Most victims report using wire transfers as a common method of transferring funds for business purposes; however, some victims report using checks as a common method of payment.

A home equity line of credit ("HELOC") allows an individual to borrow money using the equity or value of their home as collateral. For a HELOC BEC conspirators use fee-based web databases to search for potential victim account holders with large balances in their HELOC accounts. The information includes name, address, date of birth, social security number, and mortgage information.

Once conspirators identify a victim they use other online databases to obtain information commonly used in security questions, such as the victim's mother's maiden name. Conspirators then obtain credit reports on the victims in order to verify personal information and account balances. Conspirators call the victim's financial institution to impersonate the victim, and transfer the majority of the available money from the HELOC account into an account they control. Conspirators use caller-ID spoofing services to forward or transfer the victim's home telephone numbers in order to impersonate the victim.

Conspirators open business accounts that appear to be legitimate businesses that receiving large transactions.  The business accounts are usually registered with the county or state.  More often, conspirators open the account with the victim's name using a fictitious driver's license or passport.  Some conspirators use their true name or a fictitious alias.  Once the funds arrive in the conspirator's bank, the money is transferred to other members of the conspiracy after the conspirator takes a portion of the proceeds.

The FBI suspects that BRITTANY CAVANESS BARRETT ("BARRETT") and co-conspirators are facilitating a multi-million dollar BEC scheme.  In the course of the investigation, the FBI identified that the co-conspirators gained unauthorized access to victim's HELOC accounts and laundered the proceeds through BARRETT to further the BEC schemes.  The FBI seeks a warrant to arrest a co-conspirator:  BRITTANY CAVANESS BARRETT.

### Introduction and Agent Background

1.      I make this affidavit in support of a criminal complaint and arrest warrant for BRITTANY CAVANESS BARRETT for violations of 18 U.S.C. § 1956 (laundering of monetary instruments).

2.      I am a Special Agent with the FBI, and assigned to a Cyber Task Force in the Houston, Texas division.  I have been a Special Agent with the FBI since May 2016.  As a Special Agent of the FBI, I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law.  I investigate crimes involving the unauthorized intrusion into a computer or network such as computer intrusions, business email compromises, distributed denial-of-service attacks, ransomware, cyber enterprise threats, and financially motivated attacks.

2

3.      Prior to this assignment, I was a Digital Forensic Examiner at the Houston Regional Computer Forensics Laboratory where I worked a variety of matters, many of which included a significant cyber component. I have training in the preparation, presentation, and service of criminal arrest and search warrants. I have been involved in the investigation of offenses against the United States, including fraud and related activity in connection with computers.

4.      The facts set forth in this affidavit are based upon my own personal observations, my training and experience, as well as information obtained during this investigation from other sources, including: (a) other agents from the FBI, and other law enforcement personnel involved in this investigation; (b) statements made or reported by various witnesses with personal knowledge of relevant facts; and (c) my review of records obtained during the course of this investigation, as well as summaries and analyses of such documents and records that have been prepared by others.

5.      Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not set forth each and every fact I have learned in connection with this investigation. Conversations and events are related in substance and in part.

## Facts Supporting Probable Cause

**BEC of Victim A**

6.      Affiant learned that around 2017, Victim A set up a HELOC account for approximately $350,000.00 for purchasing investments. On or around December 21, 2017, an unknown individual impersonated Victim A at TD Bank's Highlands store located in Lowell, Massachusetts, and requested a HELOC advance from Victim A's HELOC account ending in 1413 in the amount of $157,243.26. The account listed on the advance was initially Victim A's Mortgage account ending in 5368. Due to this, the transaction was delayed in posting to Victim

3

A's HELOC account.  TD Bank created a new HELOC account ending in 7507 for Victim A due to the fraudulent activity.  The funds were utilized to purchase an official check for $157,243.26 and was made payable to Lincorn Foresight Construction ("Lincorn").  On or about December 22, 2017, James B. Jackson's ("Jackson") Santander Bank Lincorn account deposited a check for $157,243.26.

7.      Affiant learned of a second BEC of Victim A to Jackson's Santander Bank account. On or about December 29, 2017, an online transfer of approximately $247,987.00 was conducted via Victim A's online profile.  The funds were debited from Victim A's HELOC account and credited to a business checking account at TD Bank in the name of INRE Consulting LLC ("INRE") account number ending in 9872.  Victim A was the authorized signer on the account and the account was opened at TD Bank around April 2016.

8.      On or about January 08, 2018, an over-the-counter withdrawal of approximately $189,008.00 was conducted from INRE ending in 9872 at a TD Bank located in Middleton, Massachusetts.  An official check was purchased for $180,000.00 and was made payable to and deposited into Lincorn's account at Santander Bank on January 08, 2018 located in Everett, Massachusetts.  It was negotiated at Santander Bank.  On or about January 11, 2018, Victim A's HELOC account was frozen as a result of a notification of unauthorized activity.  Victim A stated the transactions were unauthorized.

9.      Affiant learned that on or about December 28, 2017, $78,350.00 from Jackson's Santander account was deposited via check in into JP Morgan Chase ("JPMC") account number ending in 6160, which is registered to BARRETT doing business as ("DBA") Kelz Interior Design and Supply LLC.  Affiant learned from JPMC that two cash withdrawals were conducted on January 9, 2018 from BARRETT's JMPC account ending in 6160.  One for $9,500.00 and the

other for $9,800.00 from locations in Houston, Texas. Affiant learned that there were subsequent

cash withdrawals in the Houston, Texas area from BARRETT's account ending in 6160, which

dwindled the balance to $869.74 on approximately January 31, 2018.

10.     Affiant conducted database checks on the driver's license used to open Jackson's

account at Santander Bank and no records were found. Based on my training and experience,

this is indicative of a fictitious ID. Affiant learned that the FBI Boston recently identified

Jackson's true identity. On or about July 09, 2019, "Jackson" was arrested for conspiracy to

commit bank fraud.

**BEC of Victim B**

11.     On or about February 09, 2018, Bank of America ("BOA") customer Faith

Williams ("Williams") DBA Lake Fitness Inc. received a wire for approximately $122,663.69.

The wire transfer originated from Victim B's Regions Bank ("Regions") account. On or about

May 10, 2018, BOA account Lake Fitness Inc. was subsequently closed.

12.     On or about February 15, 2018, Victim B filed a police report with Olive Branch

Police Department. Affiant learned from bank investigators that Victim B were in the process of

purchasing a home in Olive Branch. On or about February 09, 2018, Victim B received an

email, from whom they believed to be a true email, from a closing attorney at First National

Financial, which contained instructions to complete a wire transfer to a BOA account ending in

4790 in the name of Lake Inc. LLC. Affiant later reviewed records from BOA and learned that

Lake Inc. LLC was actually doing business as Lake Fitness Inc.

13.     Subsequently, Victim B met with their real estate agent and a Regions Bank loan

manager to close on their new home. At that time, Victim B was informed that the money was

never received.  Victim B realized the individual they received the email from who purported to be from First National Financial, never sent the email regarding the wire transfer.

14.     On or about February 13, 2018, BARRETT's JPMC account ending in 6160 deposited check number 1121 from Williams' BOA account in the amount of $97,410.00.  This is the same JPMC account that received funds from Victim A.  Affiant learned from JPMC that on February 23 and 26, 2018 there were two cash withdrawals from BARRETT's JMPC account ending in 6160.  The withdrawal on February 23, 2018 for $9,500.00 and the withdrawal on February 26, 2018 for $9,500.00 were from Humble, Texas and Houston, Texas.  Affiant learned that there were subsequent cash withdrawals in the Houston, Texas area from BARRETT's account ending in 6160, which dwindled the balance to $53,235.74 on approximately February 28, 2018.

15.     On February 13, 2018, check number 1122 for $23,286.00 from Williams' BOA account was deposited into BARRETT's Wells Fargo account ending in 6032.  Affiant learned from Wells Fargo that a cash withdrawal for $3,000.00 was conducted on February 15, 2018 from BARRETT's Wells Fargo account ending in 6032 in the Southern District of Texas.  Affiant learned that there were subsequent cash withdrawals in the Southern District of Texas from BARRETT's account ending in 6032, which dwindled the balance to $5,282.37 on approximately February 28, 2018.

16.     Affiant conducted database checks on the driver's license used to open Williams' account at BOA and no records were found.  Based on my training and experience, this is indicative of a fictitious ID.

6

**BEC of Victim C**

17.     On or about March 06, 2018, someone deposited approximately $290,450.00 into the BBVA Compass Bank ("BBVA") account of Charles Frederick ("Frederick") DBA CF Foresight Construction LLC from Victim C's U.S. Bank. The funds originated from Victim C's HELOC account. Affiant reviewed the check deposits provided by BBVA for Frederick's account and identified check number 101 for $289,450.00 from Victim C's U.S. Bank account, dated March 05, 2018. Affiant reviewed Fredericks's BBVA bank statement and observed a transaction titled branch deposit on hold for $290,450.00.

18.     On or about March 21, 2018, Victim C filed a police report with the Huntington Beach Police Department. Affiant learned that on or about March 07, 2018, Victim C's email password was altered. Victim C called their internet service provider ("ISP") to report the issue. The ISP informed Victim C that their emails were forwarded to an American Online ("AOL") email account, which Victim C does not have.

19.     At the same time, Victim C noticed that their home phone was not operating correctly and appeared to forward the calls to what sounded like a foreign line. On or about March 20, 2018, U.S. Bank contacted Victim C and informed them that an unknown individual had forged two checks on their HELOC account. U.S. Bank called Victim C to verify the transactions and believed the calls were forwarded to a fraudulent number. On or about March 20, 2018, Victim C contacted their ISP to complete a fraud report. The ISP explained to Victim C that an unknown individual had logged in and changed the forwarding rules on their email account and home phone.

20.     On or about March 13, 2018, BARRETT's Wells Fargo account ending in 6032 deposited check number 1002 from Frederick's BBVA account for $91,100. Affiant learned

from Wells Fargo that a cash withdrawal for $2,000.00 was conducted on March 13, 2018 from BARRETT's Wells Fargo account ending in 6032 in the Southern District of Texas. Affiant learned that there were subsequent cash withdrawals in the Southern District of Texas from BARRETT's account ending in 6032, which dwindled the balance to $53,910.64 on approximately March 31, 2018.

21.     On March 13, 2018, BARRETT's JPMC account ending in 6160 deposited check number 1004 from Frederick's BBVA account for $68,628.00. Affiant learned from JPMC that on March 01, 2018 a cash withdrawal of $9,200.00 was conducted from Houston, Texas on BARRETT's JMPC account ending in 6160. Affiant learned that there were subsequent cash withdrawals in the Houston, Texas area from BARRETT's account ending in 6160, which dwindled the balance to $8,444.85 on March 30, 2018.

22.     Affiant learned of a second BEC of Victim C to Frederick's BBVA account. On or about March 19, 2018, a transaction titled branch deposit with a hold for $195,000.00 was conducted on Frederick's BBVA account. The check was from Victim C's U.S. Bank account. It was check number was 102 and dated March 16, 2018. On or about March 21, 2018, the $195,000.00 was returned as a charge back to Victim C. The majority of the money in Frederick's BBVA account came from fraud.

23.     Affiant conducted database checks on the driver's license used to open Frederick's account at BBVA and no records were found. Based on my training and experience, this is indicative of a fictitious ID. Affiant is currently investigating Frederick's true identity and affiliation to the BEC criminal enterprise.

**Analysis of BARRETT's Bank Records**

24.     Affiant conducted analysis on BARRETT's JPMC account ending in 6160. Affiant identified approximately ten deposits (not including returned deposits) in the account that totaled $248,548.00.  Out of the ten deposits, three derived from BEC proceeds in the amounts of $78,350.00, $97,410.00 and $68,628.00, totaling $244,388.00.  Affiant estimated 98% of the deposits in BARRETT's JPMC accounts came from BEC proceeds.

25.     Affiant conducted analysis on BARRETT's Wells Fargo account ending in 6032. Affiant identified approximately seven deposits in the account (not including returned deposits) that totaled $124,026.00.  Out of the seven deposits, two derived from BEC proceeds in the amounts of $23,286.00 and $91,100.00, totaling $114,386.00.  Affiant estimated 92% of the deposits in BARRETT's Wells Fargo accounts came from BEC proceeds.

**Fictitious IDs**

26.     Affiant attempted to interview the initial recipients, Jackson, Frederick, and Williams regarding the source of funds, but were unable to identify a true person.

27.     Affiant received digital extraction reports, which were lawfully seized pursuant to the arrest of co-conspirator 1 ("CC1") for identity theft by the U.S. Postal Inspection Service ("USPIS").

28.     Affiant examined a digital extraction report for a Samsung SM-J700M mobile device and discovered that on or about October 30, 2017, CC1 sent co-conspirator 2 ("CC2") the following text:

> ROBERT K FOSTER
> DOB-07/04/1980
> HEIGHT-6'1
> HEIGHT-187 EYE-
> BRN SSN CARD-

9

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
CHARLES
FREDERICK DOB-
02/18/1984
HEIGHT-6'1
WEIGHT-187 EYE-
BRN SSN CARD-
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
CALIFORNIA ISSUE

29.     Affiant identified another text of interest from CC1 to CC2, sent on or about

November 13, 2017, the following text:

James b Jackson
Dob-07/19/1985
Height-5'11 Weight-
245 Eye-BRN
JEFFREY D SELTZER
Dob-12/16/1987
Height-5'11 Weight-
245 Eye-BRN Both
california issue

30.     The identifiers for Frederick and Jackson were identical to those used to open the

DBA accounts to receive the BEC funds from Victim A and Victim C.

**Analysis of CC1 Toll Records**

31.     Affiant analyzed toll records for CC1 and identified approximately 176 incoming

and outgoing phone calls between CC1 and BARRETT.  BARRETT's phone number was listed

as (832) 672-9409.  This is the same phone listed on BARRETT's Wells Fargo and JPMC

accounts.  Affiant also called (832) 672-9409 and a person identifying herself as BARRETT

answered.  Several of the phone calls between BARRETT and CC1 were around the same dates

when cash was withdrawn from BARRETT's accounts.

10

**Kelz Interior Design and Supply LLC**

32.    Affiant analyzed BARRETT's Wells Fargo and JPMC signature card documents and confirmed she used her true identifiers, which included her address, phone number, passport number, and social security account number ("SSN").  BARRETT is the sole signer on both of her JPMC and Wells Fargo accounts.  Both accounts received the BEC proceeds.

33.    BARRETT's JPMC and Wells Fargo accounts were opened using the business name Kelz Interior Design and Supply LLC, which was registered with the State of Texas with address 12239 Dona Lane, Houston, Texas 77044, which is in the Southern District of Texas.

34.    Affiant reviewed BARRETT's Wells Fargo signature page for Kelz Interior Design and Supply LLC, an interior design business, which she was the sole owner.  The signature page states that Kelz Interior Design and Supply LLC's EIN number was 82-3049987, that it employed approximately 11 people, and it receives $230,000.00 in annual gross sales. Kelz Interior Design and Supply LLC was filed as a limited liability company ("LLC") in the State of Texas with document number 802834631.

35.    Affiant reviewed BARRETT's JPMC signature page for Kelz Interior Design and Supply LLC, and BARRETT was the only signer.  BARRETT used her phone number (832) 672-9409 and SSN.  BARRETT's primary ID was the State of Texas LLC filing of Kelz Interior Design and Supply LLC with document number 802834631.

36.    Affiant obtained BARRETT's Texas Workforce Commission ("TWC") report using BARRETT's SSN and identified BARRETT's most recent employment was with the U.S. Postal Service in the first quarter of 2011.

**Interview with BARRETT**

37.     Affiant conducted database checks on BARRETT's current address and attempted to interview BARRETT at her residence, located at 6523 Hollow Oaks, Houston, Texas 77050. On or about April 25, 2019, Affiant contacted BARRETT via (832) 672-9409, the same number on the JPMC and Wells Fargo accounts and the number used to contact CC1. A female answered the phone and identified herself as BARRETT. BARRETT advised she was unavailable to meet due to work and picking up kids after work. BARRETT suggested meeting around 5:45 p.m. central daylight time ("CDT") near the Galleria area, because she would be out of town later in the Dallas, Texas area.

38.     On the same day, Affiant re-established contact with BARRETT and agreed to meet at a Waffle House around 7:00 p.m. CDT. BARRETT met with Affiant and Task Force Officer ("TFO") Devin Farrell and BARRETT stated that she owns a business called Physique Sculpting Spa. Since January 2019, BARRETT has rented a suite located at 1300 N. Sam Houston Parkway, Suite 205, Houston, Texas. BARRETT has no employees and previously worked from home. BARRETT received training to conduct this line of work.

39.     BARRETT told Affiant she was previously self-employed doing interior design work and hair. BARRETT advised that her business was called Kelz Interior and Design, which she recalled registering with Harris County. Affiant asked BARRETT to explain the source of funds that she received in her JPMC account. BARRETT was uncomfortable discussing this topic.

40.     Affiant provided a photo lineup in which BARRETT identified two individuals, one the individuals Affiant later found out to be CC1. BARRETT explained that the individual in the photo (listed as CC1), tried to date her a long time ago. Affiant asked BARRETT if she

12

had a personal association, connection, or their contact numbers of the individuals she identified

in the photos.  BARRETT advised she did not.  However, Affiant obtained records that indicate

that BARRETT communicated with CC1.  At the conclusion of the interview, Affiant asked

BARRETT if she knew anyone named [Redacted due to ongoing investigation, known in this

affidavit as CC1], and she said replied, "Yeah, why?"  Subsequently, Affiant terminated the

interview.

**Text Messages between CC1 and BARRETT**

41.    Affiant obtained text messages between CC1 and BARRETT.  CC1's digital

devices were lawfully seized by USPIS pursuant to their arrest for charges related to identity

theft.  Subsequently, search warrants were executed by USPIS on the devices and provided to

Affiant for review.  Affiant observed text messages between telephone numbers +18326729409

brittany The Only ("BARRETT") and +13236889000 ("CC1").

42.    The texts between BARRETT and CC1 date range are from November 28, 2017

through May 09, 2018, which was the time frame of the BEC schemes.  The following text

messages of interest include, but are not limited to the following:

**Texts identifying BARRETT's home address**

December 27, 2017

BARRETT: Hey are we still doing it?

CC1: Doing what girl?

BARRETT: The money order big head

You never told me you were ready for the address

[...]

CC1: Send me your address

BARRETT: 12239 dona lane Houston tx 77044

[Affiant learned from bank records that this address is on BARRETT's Wells Fargo and

JPMC accounts.]

Send the laptop to punk ☺

**Texts related to BEC of Victim A**

December 28, 2017

CC1: Hey

BARRETT: [BARRETT sends a photo of a receipt of $78,350.00 being deposited into

her JPMC account ending in 6160 received from Jackson's Santander account on

December 28, 2017.]

CC1: Cool

**Texts related to BEC of Victim B**

February 13, 2018

[…]

CC1: Wya

BARRETT: My grandma house

CC1: When can you get by the galleria area?

BARRETT: In a hour or 2

What you need me to do?

CC1: To pick up the check girl

120k girl

BARRETT: Oh lol my bad

Ok

Which check to put it in?

CC1: Chase

BARRETT: Ok

CC1: Which other bank u up anyway?

BARRETT: Boa and Wells Fargo

CC1: Ok

BARRETT: Where are they I'm on my way

CC1: Galleria

+1 (832) 805-8516

BARRETT: I did it

February 15, 2018

What happened to the check?

They released it then took it back

[BARRETT sends a screenshot of her phone to CC1, which contains an email sent from JPMC to BARRETT's bcsbarrett@icloud.com account regarding JPMC account ending in 6160.  Amongst other things, the email stated the following, "Dear KELZ INTERIOR DESIGN AND SUPPLY: We want you to know that on 021318, we placed a $97,210.00 hold on a deposit to your account.  These funds should be available on 022318, but deposits may be subject to further review."]

[Affiant learned that Kelz Interior Design and Supply is the LLC registered by BARRETT through the State of Texas.  According to BARRETT's JPMC records ending in 6160, check #1121 from Williams' BOA account was deposited in the amount of $97,410.00 on February 13, 2018.]

15

Never mind i just read the email

It'll be ready on the 23rd

CC1: Is all good love

Did Wells release the 48hundrd

BARRETT: Yes

[...]

**Texts related to BARRETT's birthday**

March 12, 2018

CC1: Happy birthday lovely...wish all the best to COME IN LIFE 🙉■🙉■🙉■

[Affiant learned that March 12 is BARRETT's birthday]

BARRETT: Thank you babe i love you p

Hey big head

CC1: Hey love

BARRETT: How are you? Just checking on you

Wanted to tell you i really appreciate your big head ass 😳

CC1: We got two drop tomorrow 🔥🙉■

BARRETT: 😳■😳■😳■😳■😳■😳■😳■😳■😳■😳■

CC1: Just called you back

BARRETT: No you didn't

I was just calling you back

CC1: □■♂

Put the balance of the money in my account when u free love 💅■

16

BARRETT: Ok

CC1: You still got the account number right?

BARRETT: Yes

**Text related to BEC of Victim C**

March 13, 2018

BARRETT: Send me his number again I'm on my way

CC1: 7025698460

Let me know when it ✅?

BARRETT: Just left chase i put the 68 in chase

Headed to wells

[Affiant learned that BARRETT's JPMC account ending in 6160 deposited check number 1004 from Frederick's BBVA account in the amount of $68,628.00 on March 13, 2018.]

CC1: Okay

BARRETT: It was only 200

CC1: Huh

BARRETT: 2000 in my Wells Fargo account I'll do the other before 5 today or early in the morning i have to go get cash out of the chase account to put in marks Fargo

[…]

**Texts related to fraud triggers and confirming source of funds**

March 15, 2018

[Name was redacted due to belonging to CC1]

CC1: Hey

17

What's up girl

U on the phone

BARRETT: Yes they have on this long ass hold

CC1: Oh ok

BARRETT: They need to call the company

They calling they company

CC1: Hey

BARRETT: They saying it's the company that they can't verify.....

my account set off triggers they said

Have they called

CC1: Let then called

I can the person sill walk in with you anyway

BARRETT: Huh

CC1: I can the person still walk in bank with you anyway !

I open that company too anyway

U saw them already?

Heyyy

BARRETT: We here

CC1: I know...dey called already?

BARRETT: No

CC1: You with a banker...or still waiting?

BARRETT: Banker

CC1: Ok

Keep me update?

BARRETT: Everything is good

We form

Done

[…]

**Analyzed BARRETT accounts and transfers to other suspect accounts**

43.      Affiant review BARRETT's JPMC account ending in 6160 and observed a

$320.00 wire sent to beneficiary Francisco Javier Vargas Espinoza at Cibanco SA Mexico on

January 25, 2018.  Affiant observed text conversations between CC1 and BARRETT regarding

the following wire transaction:

January 24, 2018

BARRETT:  Gm

You good? Just checking on you

CC1: Yea I'm good love

BARRETT: Ok

Hope you have a better day ☺

I'm on my way

CC1: [CC1: Sends a picture of account information to BARRETT that includes but not

limited to the following information, Beneficiario: Cibanco SA, Swift: CIMXMXMM,

Cuenta/Account: ending in 8793, Direccion/Address:AV Paseo De Las Palmas 215 Col

Lomas De Chapultepec Del Miguel Hidalgo 11000 Mexico Df, Beneficiario/Beneficiary:

Francisco Javier Vargas Espinoza.]

U done?

BARRETT: Yes i did it

The receipt in my truck and Chico dad took my truck to go pick him up but that's how much it is

[BARRETT: Sent a picture a conversion calculator screenshot that converts $320.00 into MX$5,919.55.]

CC1: Ok love

Thanks

BARRETT: Welcome

44.    Affiant reviewed BARRETT's JPMC account ending in 6160 and observed two Zelle payments to Joe Mia for $1,200.00 on April 13, 2018 and $1,600.00 on April 23, 2018. Affiant observed text conversations between CC1 and BARRETT regarding the following Zelle payments:

April 13, 2018

BARRETT: I don't have her number send it to me

I'm so happy for you ☺☺☺☺☺☺☺☺☺

CC1: +1 (321) 368-6566



U got it

BARRETT: No i got clapping hands

CC1: +1 (321) 368-6566

BARRETT: Got it

CC1: Let me know It done love

Thanks

BARRETT: [BARRETT sends a picture of the $1,200.00 confirmation using Chase quickpay via Zelle to Joe Mia.]

It's done

CC1: Thanks

BARRETT: Welcome love

April 23, 2018

CC1: Hit me when you free

Hey call me

BARRETT: Ok I'll call you in 10 in ay school

I sent Mia the 1,600

[...]

45.     Affiant conducted a cursory search on the text messages between CC1 and BARRETT for key words related to "job", "employment", "consulting", "interior", and "design" to determine if the conversations were for legitimate purposes.  Affiant only received two (2) hits on keywords "interior" and "design", which  were "Kelz interior design and supply LLC," which received the BEC proceeds.

## TECHNICAL TERMS

44.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

b.  Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

c.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  "Records" and "information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

45.  For these reasons, I ask the Court to authorize this warrant.

Hong Nguyen, Jr.
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 15, 2019.

I find probable cause to authorize this warrant.

U.S. Magistrate Judge

22